1
2
3
4
5

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERITT WEBB, | CASE NO.    1:11-cv-842-AWI-MJS (PC) |
| Plaintiff, | ORDER DISMISSING PLAINTIFFS'S COMPLAINT FOR FAILURE TO STATE A CLAIM |
| v. | |
| FERNANDO GONZALES, et al., | (ECF No. 1) |
| Defendants. | AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |
| _____/ | |

Plaintiff Meritt Webb ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff initiated this action on May 24, 2011.  (Compl., ECF No. 1.)  Plaintiff's Complaint is currently before the Court for screening.  No other parties have appeared in this action.  The Court finds that Plaintiff's Complaint fails to state a claim.  He will be given leave to file an amended complaint.

I.    **SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

§ 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not.  Id. at 1949-50.

## II.    SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff is a state prisoner currently confined at Calipatria State Prison.  Plaintiff was previously confined at California Correctional Institution at Tehachapi, California ("CCI").  He brings this action alleging violations of his rights under the First and Fourteenth Amendments.  Plaintiff also alleges claims of conspiracy.  Plaintiff names the following individuals as defendants: 1) Fernando Gonzales, CCI Warden, 2) Jerry Negrete, Former

-2-

CCI Acting Chief Deputy Warden, 3) M. Hetzel, CCI Lieutenant, 4) T. Stankorb, 602 Appeals Coordinator at CCI, 5) K. Sampson, 602 Appeals Coordinator at CCI, 6) M. Bryant, Correctional Lieutenant at CCI, 7) E. Stelter, Correctional Counselor II at CCI, 8) M. Nipper, Correctional Counselor I at CCI, 9) Solis, Correctional Officer at CCI, 10) Deleon, Correctional Officer at CCI, and 11) D. Zanchi, Correctional Facility Captain at CCI. All of the Defendants are named in their individual and official capacities.

Plaintiff asks for nominal, compensatory, and punitive damages, all in amounts to be determined by the jury.

Plaintiff alleges as follows:

Plaintiff was a member of the Men's Advisory Council ("MAC") while at CCI and during the time relevant to this Complaint. (Compl. at 3.) As a result of his MAC activities, Defendants engaged in a conspiracy to violate Plaintiff's First Amendment rights by retaliating against him and to violate his Fourteenth Amendment rights by placing him in Administrative Segregation ("Ad-Seg"). (Id. at 3-17.)

Plaintiff submitted a written complaint to Chief Deputy Warden Holland regarding Defendant Zanchi's failure to follow through on some of the promises he made to MAC members. (Id. at 3-4.) The promises related to privileges being offered to the general population inmates at CCI 4A and then rescinded. (Id. at 4.) Defendant Zanchi attended the MAC meeting held after Plaintiff filed his complaint, along with Defendant Negrete, the CCI 4A associate warden. (Id.) Defendants Zanchi and Negrete talked to Plaintiff about his complaint. (Id.)

On June 29, 2009, Defendant Zanchi, as well as Defendants Solis and Deleon attended a meeting with housing block 3, where Plaintiff was housed. (Id.) Plaintiff, as a

-3-

MAC representative, presented a complaint on behalf of the general populations inmates in housing block 3.  (Id.)  The complaint raised issues regarding razors, participation in programs, telephone access, and payment to porters.  (Id.) Defendants Solis, Deleon, and Zanchi were angered by Plaintiff's complaints, and Defendants Solis and Deleon agreed with Defendant Zanchi when he said "We'll see where all this complaining gets you!"  (Id.)

After the meeting, Plaintiff returned to his cell where his cell-mate, Lenell Brooks, was asleep.  (Compl. at 4.)  Soon after Plaintiff returned to his cell, his cell-mate and the other housing block 3 culinary workers were summoned to report to their job assignments.  (Id.) On their way to their job assignments, Plaintiff's cell-mate and others were assaulted by Defendants Solis and Deleon.[1]  (Id.)  The assault on Plaintiff's cell-mate was a result of Plaintiff's MAC activities.  (Id. at 8-9.)  The assault led Plaintiff to believe he could be subject to retaliatory acts as a result of his 602 filings.  (Id. at 9.)

After the meeting and assault on his cell-mate, Plaintiff was placed in Ad-Seg. (Compl. at 5.)  Plaintiff was placed in Ad-Seg because prison officials allege he incited his cell-mate to assault a prison staff member.  (Id.)  Specifically, a Lieutenant Ellissague told Plaintiff that Defendant Zanchi had informed him that Plaintiff had incited his cell-mate to assault prison staff.  (Id.)  On July 1, 2009, Defendant Zanchi determined that Plaintiff should be placed in Ad-Seg based on information that he had provided himself.  (Id.) Defendant Zanchi did this to exclude Plaintiff from his MAC duties.  (Id.)

Plaintiff's initial classification committee review occurred on July 9, 2009.  (Compl. at 5.)  Committee members included Defendant Zanchi, Negrete, and Nipper.  (Id.)  These

---

[1] Prison officials allege that Plaintiff's cell-mate and the other prisoners assaulted Defendants Solis and Deleon.

individuals were part of a "continual collective conspiracy," and were trying to exclude Plaintiff from his MAC activities, thereby committing illegal retaliation under the First Amendment.   (Id.)   They also violated Plaintiff's Fourteenth Amendment rights by subjecting him to Ad-Seg placement, which constitutes a significant, atypical hardship. (Id.)   They concluded that Plaintiff should be placed in Ad-Seg for sixty days, until a pretextual unit investigation could be completed.   (Id.)   This did not meet the "some evidence" standard.  (Id.)

       Plaintiff submitted a 602 appeal on July 21, 2009 to Defendant Gonzales, CCI 4A Warden.  (Compl. at 6.)  The 602 grievance was received in his office on July 23, 2009, and in the grievance, Plaintiff complained of retaliation by Defendants Solis, Deleon, and Zanchi.  (Id.)  In this grievance, Plaintiff also complained of the committee decision to continue to keep Plaintiff in Ad-Seg.  (Id.)  Defendant Sampson later told Plaintiff that the Appeals Office had never received Plaintiff's July 23, 2009 602 grievance.  (Id. at 8.)

       The unit investigation, conducted by Defendant Hetzel, occurred on July 28, 2009. (Compl. at 6.)  She was also part of the collective conspiracy.  (Id.)  Defendant Hetzel refused to interview witnesses who could exonerate Plaintiff in retaliation for Plaintiff's wish to name her in a grievance and to further the "conspiracy and retaliation."  (Id.)  Plaintiff told Defendant Hetzel that he had not spoken to his cell-mate when he returned to his cell after the June 28, 2009[2] meeting, because his cell-mate was asleep.  (Id.)  According to her job description, Defendant Hetzel should have reported her findings to her supervisor, Defendant Bryant.  (Id. at 7.)

_____

    [2] Plaintiff refers to this meeting having occurred on both June 28 and June 29, 2009.  In his amended complaint, Plaintiff should explain on what day this meeting actually occurred.

1
2
3
4
5
6
7
8
9
10
11

Plaintiff submitted another 602 appeal on July 28, 2009, the same night that Defendant Hetzel conducted her investigation. (Compl. at 6.) In this grievance, Plaintiff alleged that Defendant Hetzel was unprofessional during the investigation because she refused to properly identify herself. (Id.) Plaintiff alleged that she did this so that Plaintiff could not name her in a complaint. (Id.) This appeal was screened out by 602 Appeals Coordinator, Defendant Stankorb. (Id. at 7.) By doing so, Defendant Stankorb joined in the collective conspiracy to violate Plaintiff's rights under the First and Fourteenth Amendments. (Id.) He failed to investigate Plaintiff's allegations of conspiracy and retaliation. (Id.)

12
13
14
15

After this appeal was returned to Plaintiff, he resubmitted it on August 12, 2009, with a request for an interview. (Compl. at 7.) It was again screened out by 602 Appeals Coordinator, Defendant Sampson. (Id.) By doing so, Defendant Sampson joined in the collective conspiracy to violate Plaintiff's First and Fourteenth Amendment rights. (Id.)

16
17
18
19
20

Plaintiff resubmitted this appeal for a third time, and it was again screened out on August 25, 2009. (Compl. at 8.) Plaintiff was told by Defendant Sampson to file a 602 on his Ad-Seg placement and place a copy of the 138-G from the ICC which resulted in Plaintiff being retained in Ad-Seg. (Id.)

21
22
23
24
25

Defendant Gonzales also participated in the conspiracy by allowing the retaliation to occur after he was put on notice about the harm Plaintiff was facing and failed to respond. (Compl. at 8.) Defendant Gonzales had a duty to supervise. (Id. at 9.) Plaintiff's rights were chilled by Defendants Gonzales, Stankorb, and Sampson. (Id. at 8.)

26
27

Plaintiff resubmitted the 602 grievance as a continuation of the one that had been

-6-

screened out.[3]  (Compl. at 9.)  Plaintiff followed the instructions that Defendant Sampson gave him, but it was again screened out.  (Id.)  Defendant Sampson told Plaintiff that he could not file an appeal on behalf of his cell-mate, something Defendant Sampson did not tell him on his previous appeals.  (Id.)

Plaintiff's grievances were also denied at the later stages of the appeals process. Defendant Zanchi violated Plaintiff's First Amendment right to file grievances, access the courts, and be free of retaliatory acts.  (Compl. at 9.)  He acted as the second level reviewer of Plaintiff's October 4, 2009 appeal, that Plaintiff filed against Defendants Gonzales, Stankorb, and Sampson as a result of their failure to process Plaintiff's 602 appeals.  (Id.)  Defendant Zanchi continued in his role as part of the conspiracy by agreeing that Plaintiff's previous appeals were properly screened out.  (Id.)  The third level reviewer also eventually denied Plaintiff's October 4, 2009 appeal.  (Id. at 10.)

Plaintiff sent a letter to Defendant Gonzales that was answered by Defendant Bryant on October 14, 2009.  (Compl. at 11.)  Defendant Bryant failed to prevent Plaintiff from being subject to a longer Ad-Seg placement than necessary, and therefore subjected Plaintiff to an atypically significant hardship.  (Id.)  Defendant Bryant also participated in the collective conspiracy by being a member of the November 5, 2009 Classification Committee along with Defendants Stelter and Negrete.  (Id.)  These Defendants covered up the continued conspiracy, and kept Plaintiff in Ad-Seg.  (Id.)

Plaintiff makes the following allegations against individual Defendants:[4]

---

[3] Plaintiff appears to be referring to his July 28, 2009 602 appeal.  If Plaintiff is referring to another appeal, he should clarify this in his amended complaint.

[4] Plaintiff fails to include Defendant Stelter in this list of allegations against individual defendants.

1.     Defendant Solis retaliated against Plaintiff by assaulting Plaintiff's cell-mate and allowing Plaintiff to be placed in Ad-Seg.  (Compl. at 12.)

2.     Defendant Deleon retaliated against Plaintiff by assaulting Plaintiff's cell-mate and allowing Plaintiff to be placed in Ad-Seg.  (Compl. at 12.)

3.     Defendant Zanchi had Plaintiff placed in Ad-Seg, and decided Plaintiff should remain in Ad-Seg.  (Compl. at 13.)  Defendant Zanchi was on the committee that on July 9, 2009 decided to retain Plaintiff in Ad-Seg based on information that Defendant Zanchi provided as part of the collective conspiracy.  (Id.)  Defendant Zanchi also failed to investigate the allegations in Plaintiff's October 4, 2009 appeal.  Defendant Zanchi was part of the collective conspiracy and violated Plaintiff's First and Fourteenth Amendment rights.

4.     Defendant Gonzales failed to file Plaintiff's July 21, 2009 appeal, and failed in his supervisory duties by not investigating Plaintiff's claims of conspiracy and retaliation.  (Compl. at 13.)  He joined in the collective conspiracy by refusing to interview witnesses that could have exonerated Plaintiff.  (Id.)  Defendant Gonzales also neglected to ensure that Plaintiff was presented to the Classification Committee after the July 29, 2009 unit investigation concluded.  (Id. at 14.)

5.     Defendant Negrete was part of the collective conspiracy and retaliated against Plaintiff.  (Compl. at 14.)  He was part of the classification committee on July 9, 2009 and November 5, 2009.  (Id.)  He allowed Plaintiff to remain in Ad-Seg even though there was no evidence of his wrongdoing.  (Id.)  Defendant knew about Plaintiff's allegations of conspiracy and retaliation, but did nothing about them.  (Id.)  Defendant Negrete also violated Plaintiff's Fourteenth Amendment rights by allowing him to remain

-8-

in Ad-Seg.  (Id. at 15.)

      6.     Defendant Nipper was part of the collective conspiracy because she was part of the July 9, 2009 classification committee.  (Compl. at 15.)  She also retaliated against Plaintiff and violated his Fourteenth Amendment rights by allowing him to remain in Ad-Seg.  (Id.)

      7.     Defendant Hetzel joined in the conspiracy by refusing to interview witnesses who could exonerate Plaintiff and because Plaintiff wanted to file a complaint about her lack of professionalism.  (Compl. at 15.)

      8.     Defendant Stankorb was part of the collective conspiracy by failing to process Plaintiff's 602 appeals.  (Compl. at 16.)  He failed to investigate or tell any official about Plaintiff's allegations of conspiratorial and retaliatory acts.  (Id.)  He failed to make sure that Plaintiff's cell-mate was interviewed or that Plaintiff did not receive a longer Ad-Seg term. (Id.)  By doing so, he violated Plaintiff's First and Fourteenth Amendment rights.

      9.     Defendant Sampson joined in the collective conspiracy by failing to process Plaintiff's 602 appeals.  (Compl. at 16.)  She failed to make sure that witnesses who could exonerate Plaintiff were interviewed.  (Id.)  She failed to prevent Plaintiff from being subject to a lengthier Ad-Seg placement.  (Id.)

      10.     Defendant Bryant was part of a collective conspiracy to exclude Plaintiff from his MAC activities by fabricating evidence.  (Compl. at 17.)  Defendant Bryant failed to prevent Plaintiff from being subject to a lengthier Ad-Seg placement.  (Id.)  He was part of the November 5, 2009 classification committee.  (Id.)  He violated Plaintiff's First and Fourteenth Amendment rights.  (Id.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

III.   **ANALYSIS**

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

### A.   **First Amendment - Retaliation**

Plaintiff alleges that Defendants violated his First Amendment rights because they placed him in Ad-Seg as a result of his MAC activities.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff described the adverse action as Defendants placing him in Ad-Seg. This act constitutes an adverse action.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

The second element of a prisoner retaliation claim focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009).  A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct."  Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence.  Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").  Plaintiff relies on circumstantial evidence to claim that Defendants took adverse actions as a result of his pursuit of a protected conduct.  Plaintiff has not satisfied this element however he  Plaintiff has not adequately linked Defendants' actions to his alleged protected conduct.  His allegation that they placed him in Ad-Seg because of his MAC activities is simply speculative and belied by the intervening attack on prison officials by his cell-mate. If Plaintiff elects to amend his complaint, he must allege something more than mere suspicion or speculation to support his claim that retaliation, not this intervening incident  or some other legitimate reason, was  the basis for his Ad-Seg placement.

22
23
24
25
26
27

_____Filing a grievance is protected action under the First Amendment.  Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).  Pursuing a civil rights legal action is also protected under the First Amendment.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).  Plaintiff has not alleged that he was engaged in conduct that was protected under the First Amendment.  He does not explain why his MAC activities should be considered

-11-

to be protected conduct under the First Amendment.  In his amended complaint, Plaintiff should explain why being a MAC representative can be considered protected conduct under the First Amendment.

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity...." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999).  The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).  Plaintiff has satisfied the fourth prong because the actions he has alleged would chill a person of ordinary firmness from future First Amendment activities.

With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532. Though this is not a high burden, see id. (prisoner's allegations that search was arbitrary and capricious sufficient to satisfy this inquiry).  Plaintiff has failed to satisfy the fifth prong of a retaliation claim.  Plaintiff has not alleged facts to show that Defendants' behavior was arbitrary and capricious and without legitimate penological motivation.  Responses to his grievances indicate that Defendants had a legitimate penological goal in placing him in Ad-Seg because Plaintiff incited his cell-mate to attack prison staff.  In his amended complaint, Plaintiff should identify facts, not just conjecture, to support his belief that Defendant's claim is false

Because Plaintiff has failed to allege sufficient facts to satisfy all five prongs of his

-12-

retaliation claim, the Court finds that he has failed to state a claim upon which relief could be granted.  Plaintiff will be given leave to amend this claim and is required to allege facts that establish these five prongs.  In addition, Plaintiff must link specific Defendants to specific wrongful acts and not just allege that all of the Defendants retaliated against him as part of a conspiracy to keep him from engaging in his MAC duties.  The allegations in the existing pleading suggest  allegations of conspiracy are unlikely to meet the plausibility pleading requirement set out by Iqbal.  See Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555) (Plaintiff must set forth a claim that "is plausible on its face").

**B.      Fourteenth Amendment - Due Process**

Plaintiff alleges that his due process rights under the Fourteenth Amendment were violated because he was placed in Ad-Seg without sufficient process.

When a prisoner is placed in Ad-Seg, prison officials must, within a reasonable time, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner.  Hewitt v. Helms, 459 U.S. 460, 476 (1983), abrogated in part on other grounds, Sandin v. Conner, 515 U.S. 472 (1995). Before review, the prisoner must receive some notice of the charges and be given an opportunity to respond.  See Hewitt, 459 U.S. at 476; Mendoza v. Blodgett, 960 F.2d 1425, 1430 (9th Cir. 1992), abrogated in part on other grounds, Sandin, 515 U.S. 472 ; Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986), abrogated in part on other grounds, Sandin, 515 U.S. 472.  The prisoner is not entitled to "detailed written notice of charges, representation of counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation."  Toussaint, 801 F.2d at 1100–01 (citations omitted).

Plaintiff fails to state a claim for violation of due process. Plaintiff was placed in Ad-Seg on the charge of inciting his cellmate to attack prison staff members. Based on the submitted exhibits, Plaintiff was provided with notice as to why he was being placed in Ad-Seg. There was thus no violation of due process. Since Plaintiff is otherwise being given leave to amend in this action, he may also amend this claim to allege additional true facts, if any exist, to show the contrary. However, given the evidence described above, it certainly appears Plaintiff would be better served by concentrating on his First Amendment retaliation claim.

## C.   Conspiracy

Plaintiff also appears to seek relief based upon allegations that Defendants conspired to keep him in Ad-Seg so that he could not fulfill his MAC duties. Conspiracy under Section 1983 merely provides a mechanism by which to plead or prove a constitutional or statutory violation. Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980). Although conspiracy claims are actionable under Section 1983, "it is necessary that there have been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws. " Landrigan 628 F.2d at 742. A pro se complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights will not withstand a motion to dismiss. Zemsky v. City of New York, 821 F.2d 148, 152 (2nd Cir. 1987).

There is no here no fact pled to support a cognizable claim for conspiracy to violate Plaintiff's constitutional rights. The Court finds this claim to be frivolous. A claim is factually frivolous if its allegations are bizarre, irrational or incredible. Edwards v. Snyder 478 F.3d 827, 829-830 (7th Cir. 2007); See  Neitzke v. Williams, 490 U.S. 319, 327 (1989) (a claim

-14-

is factually frivolous under Section 1915 if it is "clearly baseless"); see also Denton v. Hernandez, 504 U.S. 25, 33 (1992) (explaining that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or wholly incredible."). If the Plaintiff's claim is frivolous, then the Court has the discretion to dismiss where the deficiencies cannot be cured by amendment. Broughton v. Cutter Laboratories 622 F.2d 458, 460 (1980) (citing Crawford v. Bell, 599 F.2d 890, 893 (9th Cir. 1979)). The critical inquiry is whether a constitution claim, however inartfully pleaded, has an arguable legal and factual basis. Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

Plaintiff's bare allegation that Defendants conspired to keep him in Ad-Seg is devoid of any suggestion of facts which might conceivably support it.  It is patently incredible and unbelievable.  Plaintiff will be given leave to amend this claim, but, again, it seems he would  be better served to concentrate on his First Amendment retaliation claim.  As the Court stated above, Plaintiff's allegations of conspiracy are unlikely to meet the plausibility pleading requirement set out by Iqbal.  See Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555) (Plaintiff must set forth a claim that "is plausible on its face").

## D. **Supervisory Liability**

As currently plead, Defendant Gonzales' conduct does not appear to be unconstitutional.  Plaintiff would like this Defendant to be held liable because he was a the Warden at CCI.

However, under Section 1983, Plaintiff must demonstrate that each named Defendant personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a

-15-

misnomer. Iqbal, 129 S.Ct. at 1949.  "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."  Id. at 1948.  Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights.  Id. at 1948–49.

Plaintiff has not alleged facts demonstrating that Defendant Gonzales personally acted to violate his rights.  Plaintiff shall be given the opportunity to file an amended complaint curing the deficiencies in this respect.  In his amended complaint, Plaintiff needs to specifically link each Defendant to a violation of his rights.

## IV.   **CONCLUSION**

Plaintiff's Complaint fails to state a claim upon which relief may be granted under section 1983.  The Court will provide Plaintiff with the opportunity to amend to cure the deficiencies in his claim.  Lopez, 203 F.3d at 1130; Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 129 S. Ct. at 1948-49.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ."  Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supercedes the prior complaint, Forsyth v. Humana,

-16-

Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and it must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.  Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Accordingly, it is HEREBY ORDERED that:

1.    The Clerk's Office shall send Plaintiff a complaint form;

2.    Plaintiff's Complaint, filed May 24, 2011, is dismissed for failure to state a claim upon which relief may be granted under section 1983;

3.    Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and

4.    If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:    February 27, 2012          /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE